UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| INNA KHARTCHENKO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE AMERICAN ONCOLOGIC HOSPITAL, INC., *et al.*,<br><br>　　　　Defendants. | Case No. 23–cv–23043–ESK–EAP<br><br>OPINION AND ORDER |

　　**THIS MATTER** having come before the Court on defendants' motion to dismiss (Motion) (ECF No. 5) the amended complaint (ECF No. 1–3 (Am. Compl.)); and plaintiff having filed an opposition to the Motion (Opposition) (ECF No. 23); and defendants having filed a reply in further support of the Motion (ECF No. 24); and the Court finding,

　　1.　Plaintiff commenced this employment retaliation action on July 11, 2023 by filing a complaint (ECF No. 1–1), which she amended on November 3, 2023 (Am. Compl.), in the Superior Court of New Jersey.  Pursuant to 28 U.S.C. §1332(a), defendants removed this action to this Court on December 13, 2023.  (ECF No. 1.)

　　2.　In 2007, plaintiff, an individual residing in New Jersey, was hired by defendants American Oncologic Hospital, the Fox Chase Cancer Center, and the Temple Health System, Inc. (collectively, Corporate Defendants), "nonprofit corporation[s] organized and existing under the laws of … Pennsylvania with … main business address[es]" in Philadelphia.  (Am. Compl. ¶¶2–4, 19.)  As the Director of Technology Transfer and New Ventures, the position plaintiff was promoted to in 2015, plaintiff's direct supervisor was defendant Sangeeta Bardhan Cook, the Corporate Defendants' Chief Innovation Officer and Senior Vice President of Commercialization Strategy and Business Development.  (*Id.* ¶¶20, 37, 66.)  Around February 2023, plaintiff reported Cook to human resources[1] for harassment and discrimination.  (*Id.* ¶¶84, 85.)  Then in April

---

　　[1] Plaintiff alleges that she reported Cook to defendant Amber Medlin, the Corporate Defendants' Senior Human Resources Business Partner.  (Am. Compl. ¶¶9, 85.)  John Lasky, the Corporate Defendants' Executive Vice President and Chief

2023, plaintiff advised defendant Jerome Maddox, the Corporate Defendants' General Counsel, of her concerns with Cook's "improper[]" response to the Corporate Defendants' "unethical" dealings.  (*Id.* ¶¶ 120–124.)  In violation of the New Jersey Conscientious Employee Protection Act (CEPA) and New Jersey Law Against Discrimination (NJLAD), plaintiff alleges that defendants retaliated against her when terminating her in June 2023 (*id.* ¶ 159) for having "invoked her disability-leave rights and objected to the unlawful and discriminatory activity of her supervisors" (*id.* p.2).

3. For the first six years of employment with the Corporate Defendants, plaintiff worked on-site.  (*See* ¶ 61.)  Then in 2013, plaintiff began "work[] on a hybrid remote … schedule from her home in New Jersey."  (*Id.*)  With the start of the COVID-19 pandemic in March 2020, plaintiff and everyone within her department transitioned to a fully remote work schedule.  (*Id.*)  In March 2022, the Corporate Defendants gave plaintiff and her department the option between a "remote, hybrid, or on-site working arrangement, and the entire department continued to work remotely."  (*Id.* ¶ 66.)  Given plaintiff's husband's "severely immunocompromised" state, plaintiff was "incredibly grateful" that her "remote work arrangements were approved through June 2023."  (*Id.* ¶¶ 65, 67.)  This approval was authorized before Cook became plaintiff's supervisor in August 2022.  (*Id.* ¶ 66.)

4. In January 2023, plaintiff underwent abdominal surgery.  (*Id.* ¶ 59.)  Since plaintiff was authorized to continue working from home for another six months, she "worked remotely while using approximately two sick days per week during her recovery."  (*Id.* ¶ 71.)  Cook, however, "informed [p]laintiff that she must, retroactively, use … leave [pursuant to the Family and Medical Leave Act] for her sick days used after her surgery and that she [could not] work until she presented a clearance note from her physician."  (*Id.* ¶ 78.)  Despite having prior approval to work from home until June 2023, plaintiff submitted a physician's note and was approved to work remotely though May 13, 2023.  (*Id.* ¶ 87.)  Plaintiff's remote work arrangement had already been decreased but was again shortened when Cook informed plaintiff on April 14, 2023 that as of May 1, 2023, she was expected "be on site three days per week" because of her "director-level" position.  (*Id.* ¶ 92.)  The Corporate Defendants allegedly had no such director-level policy, and despite the office space designated for plaintiff and her department having been taken away, Cook directed plaintiff to write a return-to-office plan for her department.  (*Id.* ¶¶ 93, 94(f).)  *Id.* ¶ 94(e), (f).)  "[F]or more than [ten] years of her [approximately 15-years-long] employment," plaintiff "worked two to five days per week in New Jersey" and

---

Human Resources Officer, contacted plaintiff to share the results of human resources' investigation into Cook.  (*Id.* ¶¶ 8, 128.)

"conducted most, and eventually all, or her work from" home. (*Id.* ¶¶ 63, 158.) Plaintiff had "successfully worked 100% remotely in her director-level position for … three years as evidenced by excellent performance reviews," yet effective June 21, 2023, she was terminated. (*Id.* ¶¶ 94(e), 157–59.)

5. On December 20, 2023, defendants filed the Motion, seeking dismissal of the amended complaint for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(6). (ECF No. 5–2 p. 5.) Defendants argue that plaintiff "may not assert CEPA or [NJ]LAD claims … because New Jersey was not her state of employment." (*Id.* p. 9.)

6. In the Opposition, plaintiff argues that this case merits a choice of law analysis that results in the application of New Jersey's law because New Jersey has the most significant relationship to the facts of the case. (ECF No. 23 pp. 24–33.) Since "the protected conduct and retaliation" for which plaintiff is seeking relief "occurred while [she] was working in New Jersey," and she "spent more than half of her working hours working from her New Jersey home office," plaintiff argues defendants sufficiently availed themselves to New Jersey law. (*Id.* pp. 24, 25.)

7. To survive dismissal under Federal Rule of Civil Procedure (Rule) 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

8. "[I]t is well-established in New Jersey that claims of a New Jersey resident, relating to out-of-state employment, are governed by the law of the state in which that New Jersey resident is employed." *Norris v. Harte-Hanks, Inc.*, 122 F. App'x 566, 569 (3d Cir. 2004) (quoting *Brunner v. AlliedSignal, Inc.*, 198 F.R.D. 612, 614 (D.N.J. 2001)). Thus, regardless of where plaintiff resides, CEPA and NJLAD are only applicable to situations in which the state of employment is New Jersey or where "the [p]laintiff has significant employment responsibilities in New Jersey." *McGovern v. Southwest Airlines*, No. 12–03579, 2013 WL 135128, at *1 (D.N.J. Jan. 8, 2013) (finding that while "New Jersey courts have consistently applied the law of the state of employment to claims of workplace discrimination," an exception may apply when "an out-of-state employer have involved non-trivial employment responsibilities in New Jersey"); *see, e.g., Norris*, 122 F. App'x at 569 (affirming the dismissal of the plaintiff's CEPA claims because "the record demonstrates that [the plaintiff] was employed in Pennsylvania" and her "New Jersey residence does her little good"); *Weinberg v. Interep Corp.*, No. 05–05458, 2006 WL 1096908, at *6

(D.N.J. Apr. 26, 2006) ("New Jersey courts have consistently applied the law of the state of employment to claims of workplace discrimination, and therefore only apply the NJLAD if the claimant was employed in New Jersey."); *Satz v. Taipina*, No. 01–5921, 2003 WL 22207205, at *18 (D.N.J. Apr. 15, 2003), *aff'd*, 122 F. App'x 598 (3d Cir.2005) (noting that although the defendants had offices in New Jersey, because the plaintiff worked exclusively in Pennsylvania and Delaware, the plaintiff could not assert a NJLAD claim); *Brunner v. Allied Signal, Inc.*, 198 F.R.D. 612, 613–14 (D.N.J. Jan. 17, 2001) (finding that the NJLAD does not apply to claims brought by a New Jersey resident against a New Jersey company when the plaintiff was employed exclusively in Pennsylvania).

9. Beyond defendants having authorized plaintiff to work from her home in New Jersey for her own convenience, plaintiff fails to establish that defendants conducted any business in New Jersey or targeted New Jersey in any purposeful way. (Am. Compl. ¶¶61–67, 83.) Plaintiff was exclusively hired to work in Pennsylvania, and her promotion was offered and accepted through the same office. (*See id.* ¶¶19, 20, 61.) While plaintiff may have worked remotely for a significant portion of her approximately 15-year employment with the Corporate Defendants, defendants attempted in April 2023 to have plaintiff return to working on-site in Pennsylvania. (*Id.* ¶92.) Plaintiff fails to indicate that she had any responsibilities outside of the Corporate Defendants' Pennsylvania offices. (*See id.* ¶63.) Therefore, plaintiff presents no basis to assert New Jersey law and a choice of law assessment is unnecessary. *See McGovern*, 2013 WL 135128, at *2; *Kunkle v. Republic Bank*, No. 21-20245, 2023 WL 4348688, at *6, 7 (D.N.J. July 5, 2023) (finding that because "the mere fact [the plaintiff] pursued and was granted the ability to spend what amounts to a proportionately minimal portion of her time working from her home in New Jersey, does not entitle her to the protections of the NJLAD" because the plaintiff "accepted and commenced employment" in Philadelphia, later accepted a promotion through the same Philadelphia office, and for her over 16 years of employment with the defendants, "only worked with and reported to individuals in the Philadelphia office").

Accordingly,

**IT IS** on this   **20th** day of **November 2024**   **ORDERED** that:

1. The Motion (ECF No. 5) is **GRANTED.** Plaintiff's claims are **DISMISSED** without prejudice. The Clerk of the Court is directed to terminate the Motion at ECF No. 5.

4

2. Plaintiff is granted leave to file a second amended complaint by **December 20, 2024** curing the deficiencies addressed herein.

                                                        */s/ Edward S. Kiel*
                                                  **EDWARD S. KIEL**
                                                  **UNITED STATES DISTRICT JUDGE**